## STATEMENT OF MICHELLE ACEVEDO

I, MICHELLE ACEVEDO, the defendant in the above-styled case, hereby state the following:

1. I am a citizen of the United States of America.

2. I am currently, and have been since childhood, thoroughly fluent and conversant in the spoken and written English language and did, in fact, possess such fluency throughout the time of the various events which are described in the paragraphs which follow.

3. I thoroughly understand and comprehend the factual matters described throughout this document and am thoroughly aware of the actions and conduct on my part which I have acknowledged and described in the paragraphs which follow. I have consulted with my attorney regarding the factual assertions which I have adopted, admitted, and confirmed throughout this document as being true and correct as evidenced by my signature appearing below. In addition, I have obtained my attorney's assistance in obtaining a clearer understanding as to exactly what has been asserted and attributed to me in this document before signing it. To the extent that I may have been unclear as to the matters described below, I have obtained clarification as necessary from my attorney in order to further assist me in knowingly and intelligently acknowledging the truth of the factual matters which are described by me in detail below.

5. In paragraphs 7 through 10 below, I have confirmed and acknowledged that I participated in four separate purchase money mortgage loan closing transactions, each of which involved a different mortgage lender and a different property as therein described. In addition, in paragraph 6 below, I have confirmed and acknowledged, that I participated in a refinance mortgage loan lending transaction as described in that paragraph. In fact, although I did

1

participate in every one of these five transactions as described, I did so in each instance at the request of my then-husband and co-defendant, Lazaro Quintana, whom I believed at the time to have orchestrated and conducted the pre-closing matters related to each such transaction and, on certain occasions, as revealed to me by my attorney and the government, forged my signature on a number of pre-closing loan applications. Essentially, my involvement consisted primarily of assuming the role of the nominal purchaser/borrower with regard to these transactions at my then-husband's request and direction, and then making the necessary appearances at the closings for the purpose of signing the required loan-related documents. In so doing, I admit and acknowledge that I was aware that these closing documents and final loan applications contained materially false information, some of which I have set forth in the paragraphs which follow to the extent that I can still recall. Furthermore, although my recollection of certain specific false details, such as the exact amounts set forth in my loan applications concerning my alleged monthly income, bank balances, and monthly rental payments, as well as the amounts of the loans I received, is no longer precise, I do acknowledge that false information concerning these same matters was contained within the applications which I signed and are evidenced by my signature appearing on those documents.

6.  <u>59th Street Property Refinance Transaction</u>

In December 2002, Lazaro Quintana and I both signed and submitted a joint residential mortgage refinance application through a mortgage broker to Impac Lending Group. In this application, we both maintained that the mortgaged property at 6003 SW 59th Street, Miami, Florida, was our "primary residence" and that we intended that it would serve as such in the future. In reality, although we previously had lived in the property for a fairly short time, this

2

property was being rented out by us for income-producing purposes and it was our intention to make future use of this property as an investment. In addition, in this same application, it was further claimed that Lazaro Quintana worked for a company which I knew did not employ him.

7.  63rd Avenue Property Purchase

On July 9, 2004, I signed a final loan application at time of closing in connection with my purchase of another investment property located at 6400 SW 63rd Avenue, Miami, Florida. In this loan application, which was submitted to First Franklin Corporation through another mortgage broker, it was falsely represented that I intended to live in this same 63rd Avenue property as my primary residence. It also was claimed in the application that I was earning a salary from my so-called "employment" at a business which did not actually employ me. Although I was then working full time at Eagle Global Logistics, I was never an employee of this other business, nor was I, in any event, making the amount of income attributed to me in the application.

8.  Leeward Court Property Purchase

On July 21, 2006, I signed a contract to purchase a residence at 160 Leeward Court, Marco Island, Florida. In my final loan application, from which I eventually received a mortgage loan from SunTrust Bank to purchase the property (and which I signed at closing), I listed my source of income and employment as "Metro Tires Corporation." In reality, I knew that this corporation was non-functional and that Metro Tires had never really conducted any business, nor that I was receiving income from this non-functional business. I also falsely represented in this application that I intended to live in this property as a residence and would not be acquiring it for investment purposes. I knew this to be a false statement at the time and, in fact, rather than

3

ever live in the property, I sold this same Marco Island property a few weeks later on November 7, 2006 to "Lazaro Quintana." Quintana, to whom I was married at the time, actually acquired my property sale profits at closing when they were distributed to me in connection with my "sale" of this property to him.

9. <u>Lorelane Place Property Purchase</u>

On November 29, 2006, I signed a final loan application at closing in connection with my purchase of investment property located at 122 Lorelane Place, Key Largo, Florida. In this loan application, which was submitted to LoanCity through a mortgage broker, it was falsely represented that I intended to live in this same property as my primary residence. It also was claimed in the application that I was living and renting at residence at which I had never lived or for which I had paid rent.

10. <u>59th Street Property Purchase</u>

On March 14, 2007, I signed a final loan application at closing in connection with my re-purchase of the previously mentioned investment property located at 6003 S.W. 59th Street, Miami, Florida. [It should be noted that, after Quintana and I had obtained the refinance loan from Impac Funding on this property, we sold it to Quintana's sister and her husband approximately one year later. At this time, my husband was now desirous of purchasing it back from them.] In this loan application, which was submitted to Washington Mutual, and which requested a mortgage loan to me, it was falsely represented that I intended to live in this same property as my primary residence. It also was claimed in the application that I was employed by "Metro Tires, Inc." at a considerable monthly salary. As stated earlier, I knew that Metro Tires was non-functional and had never conducted any business.

11. I have signed this statement and have made the admissions contained herein because I desire to plead guilty in accordance with the terms of my written Plea Agreement with the government and to obtain the various benefits offered to me by the government as reflected in that same Plea Agreement. These benefits have been offered by the government in consideration of the guilty plea which I have promised to make. I further agree and understand that, in the event I do not enter the guilty plea as promised or, after having entered such a guilty plea, I subsequently succeed in withdrawing it for any reason whatsoever, the details and/or substance of this statement will be admissible as evidence against me in any resulting trial or other criminal proceeding. This is due to the fact that, by my signature appearing below, I am agreeing and stipulating that these statements are admissible as evidence and despite the provisions of Rule 410 of the Federal Rules of Evidence which provides that statements made by a defendant in connection with a guilty plea or to the prosecuting authority in the course of plea negotiations are inadmissible in the event that a guilty plea does not result or is later withdrawn. I further agree, in the event I fail to plead guilty as promised or succeed in later withdrawing such a guilty plea, that, to the extent Rule 410 may afford me any potential right to obtain a court order of suppression of the statements contained in this document or a judicial ruling of inadmissibility concerning these same statements, I knowingly and voluntarily waive any such right.

8-5-2009
DATE

_[signature]_
MICHELLE ACEVEDO

8/5/2009
DATE

_[signature]_
WITNESS LESLIE L. HAMILTON
SSA, FBI

8/21/09

_[signature]_
Jennifer V. Ortega, Esq.
Counsel for Defendant